UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

HEATHER CLARK,

844 state st

Bangor ME, 04401

Plaintiff,

v.

NORTHERN LIGHT HEALTH,

43 Whiting Hill Road

Brewer, ME 04412

Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

This action arises from Northern Light Health's rescission of Plaintiff's employment offer after Plaintiff accepted the offer, completed onboarding requirements, resigned from existing employment in reliance upon the offer, and incurred pre-employment expenses.

Plaintiff alleges that Northern Light Health rescinded the offer after becoming aware of Plaintiff's prior employment with Securitas Security Services USA, Inc. and Plaintiff's active litigation against Securitas.

## II. PARTIES

Plaintiff Heather Clark is a resident of Bangor, Maine.

Defendant Northern Light Health is a healthcare system conducting business throughout the State of Maine. With its principal place of business in Brewer Maine.

## III. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 to the extent Plaintiff asserts claims arising under federal law.

This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367.

Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391.

## IV. FACTUAL ALLEGATIONS

1. Plaintiff applied for employment as a Patient Transportation Specialist with Northern Light Health.
2. Defendant extended Plaintiff a conditional offer of employment.
3. Defendant represented that training would be conducted on a full-time basis and that additional hours could become available following training.
4. Plaintiff completed onboarding requirements, medical screening requirements, and other pre-employment conditions required by Defendant.
5. At the time Plaintiff accepted Defendant's offer, Plaintiff was employed by River City Commercial Cleaning.
6. Plaintiff earned approximately $17.00 per hour and averaged approximately 35 hours per week.

7. In reliance upon Defendant's offer of employment, Plaintiff resigned from River City Commercial Cleaning.

8. Plaintiff also incurred expenses associated with Defendant's hiring process, including a required medical examination.

9. Plaintiff previously worked for Securitas Security Services USA, Inc., a vendor providing services at Northern Light facilities.

10. At the time Plaintiff applied for employment with Defendant, Plaintiff had active litigation pending against Securitas.

11. Northern Light Health's employment application specifically requests information concerning whether applicants have worked for Northern Light Health vendors, contractors, or affiliated entities.

12. Plaintiff disclosed employment with River City Commercial Cleaning, a vendor operating within Northern Light Health facilities.

13. Defendant nevertheless approved Plaintiff for employment and extended an employment offer.

14. Defendant subsequently rescinded Plaintiff's employment offer.

15. Defendant initially claimed the rescission was based upon alleged inaccuracies within Plaintiff's application materials.

16. Plaintiff repeatedly requested clarification concerning those alleged inaccuracies.

17. Defendant failed to identify any material false statement, omission, or misrepresentation that would justify rescission of the employment offer.

18. Upon further inquiry, Defendant identified Plaintiff's prior employment relationship with Securitas as a basis for concern.

19. Defendant provided inconsistent explanations concerning how it obtained information regarding Plaintiff's prior employment with Securitas.

20. Defendant initially represented that such information was obtained through a background investigation.

21. Plaintiff later learned that the background investigation did not include prior employment verification.

22. Defendant subsequently changed its explanation and asserted that the information was obtained independently of the background investigation.

23. Defendant failed to identify the source of the information or explain the change in explanation.

24. Upon information and belief, Plaintiff's prior employment relationship with Securitas and Plaintiff's pending litigation against Securitas were substantial motivating factors in Defendant's decision to rescind Plaintiff's employment offer.

25. Northern Light Health is one of the largest healthcare systems in Maine and has publicly represented that it employs more than 10,000 individuals statewide.

26. Northern Light Health has publicly represented that approximately 93% of Maine's population resides within its service area.

27. Upon information and belief, Northern Light Health exercises substantial influence within the healthcare labor market in Bangor and throughout Maine.

28. In separate federal litigation, Northern Light Health admitted that a Northern Light security manager requested that Securitas remove a Securitas employee from a Northern Light work assignment and further admitted that the employee had been assigned by Securitas to work at Northern Light facilities.

29. Upon information and belief, those admissions demonstrate that Northern Light Health possessed the ability to influence whether Securitas employees remained assigned to Northern Light facilities.

30. Following rescission of Plaintiff's employment offer, Defendant sought Plaintiff's agreement to a no-rehire provision that would prohibit Plaintiff from seeking future employment opportunities within the Northern Light Health system.

31. Plaintiff declined to agree to the proposed no-rehire provision.

32. Upon information and belief, the proposed no-rehire restriction was intended to prevent Plaintiff from competing for future employment opportunities throughout the Northern Light Health system.

[1] Clarke v. Northern Light Health, et al., No. 1:26-cv-00141-SDN (D. Me.), Defendants' Answer to Complaint, admitting that "NLH Security Manager Tristan Shank requested that Securitas remove Plaintiff from NLH Defendants' work schedule on or around March 7, 2025."

[2] Clarke v. Northern Light Health, et al., No. 1:26-cv-00141-SDN (D. Me.), Defendants' Answer to Complaint, admitting that Plaintiff had been assigned by Securitas to provide services at Northern Light facilities.

## COUNT I

### PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE

33. Plaintiff incorporates all preceding paragraphs.

34. Defendant extended an employment offer to Plaintiff.

35. Defendant reasonably expected Plaintiff to rely upon that offer.

36. Plaintiff reasonably relied upon the offer by resigning from existing employment and completing Defendant's onboarding requirements.

37. Defendant subsequently rescinded the offer.

38. Plaintiff suffered economic damages as a direct result of that reliance.

## COUNT II

## VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT

## 15 U.S.C. § 1

39.  Plaintiff incorporates all preceding paragraphs.

40.  At all relevant times, Securitas Security Services USA, Inc. maintained an ongoing business relationship with Defendant as a contract vendor providing services at Northern Light Health facilities.

41.  Upon information and belief, Defendant maintained, enforced, participated in, benefited from, or acted pursuant to an agreement, understanding, policy, practice, or course of conduct restricting employment opportunities available to current or former Securitas employees.

42.  Defendant rescinded Plaintiff's employment offer after becoming aware of Plaintiff's prior employment relationship with Securitas and Plaintiff's active litigation against Securitas.

43.  Defendant's conduct substantially interfered with Plaintiff's ability to compete for employment opportunities within the Bangor-area healthcare labor market.

44.  Upon information and belief, Defendant's conduct constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Antitrust Act.[3]

## COUNT III

## VIOLATION OF 26 M.R.S. § 599-B

45.  Plaintiff incorporates all preceding paragraphs.

46.  Plaintiff was a former employee of Securitas Security Services USA, Inc.

47.  Upon information and belief, Defendant's actions were taken pursuant to, in furtherance of, or consistent with an agreement, understanding, policy, practice, or course of conduct restricting the hiring of current or former Securitas employees.

48.  Defendant rescinded Plaintiff's employment offer only after becoming aware of Plaintiff's prior employment relationship with Securitas and Plaintiff's active litigation against Securitas.

49.  Defendant's conduct is consistent with the type of employment restrictions prohibited by Maine law.[4]

---

[3] Section 1 of the Sherman Antitrust Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The United States Department of Justice and Federal Trade Commission have recognized that agreements restricting employee mobility, including no-poach agreements and agreements restricting hiring between employers, may violate Section 1 of the Sherman Act. See U.S. Department of Justice & Federal Trade Commission, Antitrust Guidance for Human Resource Professionals (Oct. 2016).

[4] Maine law provides that a "restrictive employment agreement" includes an agreement between employers that "prohibits or restricts one employer from soliciting or hiring another employer's employees or former employees." 26 M.R.S. § 599-B(1)(C). Maine law further prohibits employers from entering into, enforcing, or threatening to enforce such agreements.

50.  Plaintiff seeks discovery regarding any vendor agreements, employment restrictions, hiring policies, communications, or practices governing the hiring of former Securitas employees.

## **DAMAGES**

51. Plaintiff lost employment, wages, benefits, and future earning opportunities.

52. Plaintiff loses approximately from the Transportation Specialist position are a minimum of **$15,808, with a maximum of $39,520/year**

53. Plaintiff loses approximately **$30,940 i**n annual earnings after resigning from River City Commercial Cleaning.

54. Plaintiff incurred pre-employment expenses and other consequential damages in the amount of **$30**.

55. Plaintiff seeks damages in the amount of **$75,000**.

56. Plaintiff seeks compensatory damages in an amount not less than $75,000, together with all available statutory damages, treble damages where authorized by law, prejudgment interest, post-judgment interest, costs of suit, injunctive relief, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in her favor and against Defendant and requests:

A. Compensatory damages in an amount not less than $75,000;

B. Treble damages pursuant to 15 U.S.C. § 15 in the amount of $225,000, or such amount as may be proven at trial;

C. Prejudgment interest as permitted by law;

D. Post-judgment interest as permitted by law;

E. Costs of suit, filing fees, service fees, and all other recoverable litigation expenses;

F. Injunctive relief prohibiting the enforcement of any agreement, policy, practice, or restriction that unlawfully limits Plaintiff's future employment opportunities;

G. Declaratory relief as the Court deems appropriate;

H. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Heather Clark

Plaintiff, Pro Se

844 state st

Bangor, ME 04401

Clarkie00714@gmail.com