UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HEATHER CLARK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00314-JAW |
| | ) | |
| NORTHERN LIGHT HEALTH, | ) | |
| | ) | |
| Defendant | ) | |

RECOMMENDED DECISION AFTER PRELIMINARY REVIEW

Because I granted Heather Clark's application to proceed *in forma pauperis*, *see* Order (ECF No. 4), her complaint (ECF No. 1) is now before me for preliminary review, *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court must, after granting IFP status, "dismiss the case at any time if" it determines that the action "is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief").

In her pro se complaint, Clark alleges that Northern Light Health withdrew a conditional offer of employment after learning that she was previously employed by and had pending litigation against its security vendor, Securitas Security Services USA, Inc. Complaint at 1-3. In addition to two state law claims, she brings a claim under section 1 of the Sherman Antitrust Act based on her allegations that Northern Light has unlawfully restricted trade by agreeing to restrict "employment opportunities available to current or former Securitas employees," which has, in turn, "interfered with [her] ability to compete for employment opportunities within the

1

Bangor-area healthcare labor market" where Northern Light is the largest employer. *Id.* at 5-7.  She also highlights that, after rescinding its employment offer, Northern Light asked her to agree "to a no-rehire provision that would prohibit [her] from seeking future employment opportunities within the Northern Light Health system," but she declined to do so.  *Id.* at 5.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1. Although the Sherman Act does not itself provide a private right of action, "the Clayton Act provides a private right of action for a substantive violation of a federal antitrust law." *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 781 & n.2 (D.N.H. 1994) (citing 15 U.S.C. § 15).

Clark's complaint fails to plausibly state a claim under section 1 of the Sherman Act for two independent reasons.

First, Clark has failed to allege any facts suggesting harm beyond her own loss of employment opportunities with Northern Light.  In the absence of any cogent allegations of harm to market competition more broadly, her complaint fails to show that she suffered an "injury of the type the antitrust laws were intended to prevent"— i.e., an antitrust injury. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Sterling Merch., Inc. v. Nestlé, S.A.*, 656 F.3d 112, 122 (1st Cir. 2011) ("It is axiomatic that antitrust laws are concerned with protecting against impairments to a market's competitiveness and not impairments to any one

market actor."); *Walker v. Analog Devices, Inc.*, No. 22-11934-PBS, 2023 WL 5353764, at *4 (D. Mass. Aug. 4, 2023) (rec. dec.) ("[The plaintiff's] alleged injury is not one that the antitrust laws were intended to prevent. [He] alleges that the restrictive agreement limited his own professional mobility and career prospects. However, the antitrust laws concern themselves not with injury to the individual, but rather to the competitive process as a whole."), *aff'd*, ECF No. 23 (D. Mass. Aug. 18, 2023), *aff'd*, No. 23-1739, 2024 WL 4190856 (1st Cir. May 30, 2024). Without an antitrust injury, Clark lacks standing to pursue her Sherman Act claim. *See Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 293-94 (1st Cir. 2022) (noting that "[l]ack of antitrust injury is typically enough by itself to negate standing" to bring a federal antitrust claim).

Second, even setting aside issues of standing, Clark baldly asserts that Northern Light and Securitas have entered into some sort of no-hire or no-poach agreement but offers no additional details—such as who, what, when, where, and why—that would support the plausible existence of such concerted action.[1] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 565 n.10 (2007) (noting that "a naked

---

[1] In the materials attached to Clark's complaint, Northern Light indicated that it rescinded its job offer not because of an agreement not to hire Securitas employees but because Clark failed to disclose when asked on her application that she (1) was previously employed by Securitas and (2) had been terminated from that position. *See* ECF Nos. 1-2 to 1-3. Clark disbelieves these stated reasons, but points only to the business relationship between Northern Light and Securitas and her own rescinded job offer, neither of which plausibly supports the existence of a no-hire or no-poach agreement. *See Honeywell Int'l Inc. v. Ecoer Inc.*, No. 24 Civ. 1464 (PAE), 2024 WL 3521591, at *7 (S.D.N.Y. July 23, 2024) ("The existence of a lawful business relationship does not plausibly suggest a separate, unlawful agreement to restrain trade."); *Walker*, 2023 WL 5353764, at *5-6 (holding that a plaintiff failed to plausibly allege concerted action where he "pointed to nothing, other than his own inability to obtain employment, to indicate any coordinated action between [the defendant] and other companies").

assertion of conspiracy in a [Sherman Act] § 1 complaint . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)).  In the absence of plausibly alleged concerted action between Northern Light and Securitas, Clark's complaint fails to state a claim under section 1 of the Sherman Act.  *See Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 16 (1st Cir. 2004) (explaining that "concerted action" is a necessary element of "a successful section 1 claim").

Finally, because Clark's only federal claim is subject to early dismissal and there is no diversity jurisdiction (both parties appearing to be citizens of Maine for diversity purposes), this Court should decline to retain supplemental jurisdiction over her state law claims and dismiss those claims without prejudice to their renewal in state court.  *See Zell v. Ricci*, 957 F.3d 1, 15 (1st Cir. 2020) (noting that district courts should generally decline to retain supplemental jurisdiction over state law claims when all federal claims have been dismissed early in a case); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

For the foregoing reasons, I recommend that the Court **DISMISS** Clark's federal antitrust claim (Count II) for failure to state a claim and **DISMISS** her state law claims (Counts I & III) without prejudice to their renewal in state court.

### *NOTICE*

***A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered***

*pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: July 9, 2026

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge

5