UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HEATHER CLARK,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )          No. 1:26-cv-00314-JAW
                                  )
NORTHERN LIGHT HEALTH,            )
                                  )
            Defendant.            )

## ORDER AFFIRMING RECOMMENDED DECISION OVER OBJECTION

The court affirms the recommended decision of a magistrate judge over a pro se plaintiff's several objections. The court concludes the plaintiff lacks standing to pursue her federal antitrust claim and that the complaint also fails to plausibly allege an antirust claim. Because the court dismisses the federal antitrust claim, it declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims and dismisses the complaint in its entirety. The court dismisses without prejudice the plaintiff's request for leave to amend the complaint since she has not made a formal motion.

## I.      BACKGROUND

On June 17, 2026, Heather Clark filed a civil complaint alleging Northern Light Health (NLH) violated state law and federal antitrust law. *Compl. and Demand for Jury Trial* (ECF No. 1) (*Compl.*). On July 9, 2026, the United States Magistrate Judge, after granting Ms. Clark's motion to proceed in forma pauperis and conducting a preliminary review, recommended dismissing the complaint because it failed to plausibly state a claim under Section 1 of the Sherman Act

(Section 1 claim). *Recommended Decision after Prelim. Review* (ECF No. 5) (*Rec. Dec.*). The Magistrate Judge concluded Ms. Clark (1) lacked "antitrust" standing to pursue her Section 1 claim and (2) failed to plausibly allege NLH engaged in concerted action. *Id.* at 2-4. The Magistrate Judge further recommended the Court decline to exercise supplemental jurisdiction and dismiss Ms. Clark's remaining state law claims. *Id.* at 4.

On July 19, 2026, Ms. Clark objected to the Magistrate Judge's recommended decision. *Pl.'s Obj. to the Magistrate Judge's Recommended Decision* (ECF No. 6) (*Obj.*). First, Ms. Clark argues the complaint plausibly alleges concerted action and the Magistrate Judge improperly credited NLH's "factual defense," applied a higher standard than Rule 8 requires for pleadings, and relied on "materially distinguishable" caselaw. *Id.* at 1-2, 3-6. Second, Ms. Clark argues the complaint sufficiently alleges antitrust injury and the Magistrate Judge incorrectly construed the complaint to allege only personal injury, rather than a broader injury to the labor market sufficient for antitrust standing. *Id.* at 2-3, 6. Accordingly, Ms. Clark asks this Court to permit her complaint to proceed to discovery. *Id.* at 5, 7. In the alternative, Ms. Clark asks that this Court grant her leave to amend her complaint. *Id.* at 7.

## II.    DISCUSSION

Having performed a de novo review, the Court concludes Ms. Clark lacks antitrust standing and that the complaint fails to plausibly allege a Section 1 claim. First, Ms. Clark lacks antitrust standing because she has not plausibly alleged an

2

antitrust injury.  Second, the complaint does not allege a plausible Section 1 claim because it does not sufficiently plead NLH engaged in concerted action and fails to adequately define the relevant market.  Ms. Clark's objections to the Magistrate Judge's recommended decision on these bases are without merit.

### A.    Antitrust Standing[1]

In a federal antitrust case, a plaintiff must satisfy both the typical requirements of Article III standing and the so-called "antitrust standing" doctrine. *See Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 293 (1st Cir. 2022); *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31, (1983) (In addition to satisfying the requirements of Article III standing, "court[s] must make a further determination whether the plaintiff is a proper party to bring a private antitrust action").  Here, the only question is whether Ms. Clark has antitrust standing.[2]

As the First Circuit has explained, "[t]he purpose of the antitrust standing doctrine is 'to avoid overdeterrence' and to 'ensure that suits inapposite to the goals of the antitrust laws are not litigated'" so "'that persons operating in the market do not restrict procompetitive behavior because of a fear of antitrust liability.'"  *Vázquez-Ramos*, 55 F.4th at 293 (quoting *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir.

---

[1]    The Clayton Act creates private causes of action for violations of federal antitrust law.  *See* 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained"); *id.* § 26 ("Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws").

[2]    Although the Magistrate Judge did not address Ms. Clark's Article III standing, the Court's review of the complaint indicates Ms. Clark has satisfied those requirements.

1999)).  "To further this purpose," courts apply a six-factor test "to ensure that the prospective antitrust plaintiff has suffered an injury of the kind antitrust laws were intended to prevent, such that the plaintiff is a proper party to bring a federal antitrust suit." *Id.*  Specifically, the First Circuit instructs district courts to balance the following factors:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

*Id.* (citations omitted).

The First Circuit has emphasized the third factor of this test—whether the plaintiff has sufficiently alleged an "antitrust injury."  *See RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 13 (1st Cir. 2001).  In the First Circuit, a "[l]ack of an antitrust injury is typically enough by itself to negate standing." *Vázquez-Ramos*, 55 F.4th at 294 (citation omitted); *see also RSA Media*, 260 F.3d at 14 ("Even when a causal link has been established between the alleged violation and the injury, the absence of 'antitrust injury' will generally defeat standing") (first citing *Serpa*, 199 F.3d at 10-11; and then citing *Sullivan v. Tagliabue*, 25 F.3d 43, 47 (1st Cir. 1994)).

The Supreme Court defines "antitrust injury" as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *accord Vázquez-Ramos*, 55 F.4th at 294 ("[T]he alleged injury must be the type of injury the antitrust violation would cause to competition") (citation

4

omitted).  Accordingly, to have antitrust standing, Ms. Clark must plausibly allege "an injury to the competitive process rather than to an individual competitor." *Walker v. Analog Devices, Inc.*, No. 23-1739, 2024 U.S. App. LEXIS 23662, at *2-3 (1st Cir. May 30, 2024) (collecting caselaw).

Here, the complaint does not allege an injury that antitrust laws are intended to prevent.  Ms. Clark claims that NLH "restrained competition within the Bangor healthcare labor market by restricting employment opportunities available to current and former Securitas employees" when it rescinded her conditional employment offer "immediately after learning of [her] prior employment with and pending litigation against Securitas" and "attempted to impose a permanent no-rehire restriction." *Obj.* at 3, 6; *Compl.* ¶¶ 1-2, 9-14, 18-32.  At the threshold, "loss of employment alone is insufficient for an antitrust injury." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge No. 1821 v. Verso Paper Corp.*, 80 F. Supp. 3d 247, 274 (D. Me. 2015).  Thus, any alleged injury flowing from NLH's recission of its conditional employment offer must combine with additional allegations of anticompetitive conduct to demonstrate an antitrust injury.  Here, Ms. Clark insists that NLH's recission combined with its proposed no-rehire agreement is sufficient to show antitrust injury.  The Court disagrees.

As pleaded, the complaint does not allege NLH engaged in anticompetitive conduct as contemplated by federal antitrust law.  The no-rehire restriction Ms. Clark decries as anticompetitive appears to be an agreement between NLH and Ms. Clark that would "prohibit Plaintiff," i.e., Ms. Clark herself, "from seeking future

employment opportunities within the Northern Light Health system." *Compl.* ¶ 30. To the extent "the proposed no-rehire restriction was intended to prevent [Ms. Clark] from competing for future employment opportunities throughout the Northern Light Health system," as alleged in the complaint, such a restriction—to which Ms. Clark declined to agree—would not impair competition but merely limit NLH itself from hiring Ms. Clark in the future.

This kind of self-imposed restraint is not anticompetitive conduct under federal antitrust law; any injury is to Ms. Clark individually, not to market competition. *See Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 486 (1st Cir. 1988) ("Anticompetitive . . . refers not to actions that merely injure individual competitors, but rather to actions that harm the competitive process") (citation omitted); *see also Am. Steel Erectors v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 815 F.3d 43, 60 (1st Cir. 2016) ("The Sherman Act protects against unlawful impairments to *competition*, not to individual competitors") (emphasis in original) (citations omitted); *Cable Line, Inc. v. Comcast Cable Commc'ns of Pa., Inc.*, No. 3:16-cv-1000, 2017 U.S. Dist. LEXIS 172583, at *12 (M.D. Pa. Oct. 18, 2017) (Caselaw "is replete with examples where plaintiffs failed to establish an antitrust claim when they have only alleged injury to their own welfare").[3] Moreover, Ms. Clark cannot claim she suffered injury from the no-rehire restriction, because she declined to agree to the proposed provision. *See Compl.* ¶ 31.

---

[3] Similarly, had Ms. Clark agreed to the no-rehire agreement, she would have consensually restrained herself as an individual competitor from working for NLH in the future, which, again, does not appear to be the kind of anticompetitive conduct giving rise to a cause of action under federal antitrust law.

In her objection, Ms. Clark argues that the complaint alleges a "substantially broader harm . . . beyond [her] individual employment opportunity" that "restrain[s] employee mobility and reduce[s] employment opportunities available to current and former Securitas employees . . . within the Bangor healthcare labor market." *Obj.* at 2-3. According to Ms. Clark, the Magistrate Judge erred in concluding that allegation was insufficient to show antitrust standing at the pleading stage, because whether she "can ultimately prove those allegations is a matter for discovery and later stages of the litigation." *Id.* at 3. Again, the Court disagrees.

Nowhere in the complaint does Ms. Clark allege NLH entered into similar no-rehire agreements with other current or former Securitas employees. The complaint merely alleges NLH proposed this no-rehire agreement between itself and Ms. Clark. Although the complaint alleges "[i]n separate federal litigation, [NLH] admitted that a Northern Light security manager requested that Securitas remove a Securitas employee from a Northern Light work assignment and further admitted the employee had been assigned by Securitas to work at Northern Light facilities," *see id.* ¶ 28, the only case cited is an employment discrimination and retaliation lawsuit against NLH, Northern Light Eastern Maine Medical Center, and Securitas. *Id.* at 5 (citing [*Tyler Clarke v. Northern Light Health,*] No. 1:26-cv-00141-SDN). However, that case concerns a dispute over removing the plaintiff from work assignments due to alleged misconduct, and the complaint does not mention a no-rehire agreement or raise a federal antitrust claim. *See Clarke, Compl.* at 1-10 (ECF No. 1); *Clamp-All Corp.,* 851 F.2d at 486 ("Anticompetitive . . . refers not to actions that merely injure

7

individual competitors, but rather to actions that harm the competitive process") (citation omitted).

The Court therefore cannot conclude Ms. Clark has met her burden of demonstrating antitrust standing. *See Sterling Merch., Inc. v. Nestlé, S.A.*, 656 F.3d 112, 121 (1st Cir. 2011) (citation omitted).   Nor did the Magistrate Judge "overextend[ ]" First Circuit caselaw in concluding otherwise. *Cf. Obj.* at 6. Consistent with *Vázquez-Ramos* and other First Circuit caselaw, upon de novo review, the Court agrees with the Magistrate Judge's conclusion that Ms. Clark lacks antitrust standing.[4]

## B.    Concerted Action

"Section 1 of the [Sherman] Act prohibits unreasonable restraints of trade or commerce through contracts, combinations, or conspiracies; it thus applies only to concerted action that unreasonably restrains trade." *Am. Steel Erectors*, 815 F.3d at 60.  Accordingly, a Section 1 claim has two elements: (1) concerted action and (2) "the actors' agreement must involve either restrictions that are per se illegal or restraints of trade that fail scrutiny under the rule of reason." *Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 16 (1st Cir. 2004).   An antitrust plaintiff must present "direct or circumstantial evidence of defendants' 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Evergreen Partnering Grp., Inc. v. Pactiv*

---

[4]     Although the absence of antitrust injury is enough to defeat Ms. Clark's antitrust standing, looking at the other factors, the Court remains unconvinced that the complaint demonstrates antitrust standing. *See Vázquez-Ramos*, 55 F.4th at 293.

*Corp.*, 720 F.3d 33, 43 (1st Cir. 2013) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).

The complaint's conclusory allegation that NLH and Securitas have entered into a no-poach agreement is insufficient to plausibly allege concerted action. Rather, the complaint must present sufficient factual content of concerted action (i.e., a contract, combination, or conspiracy) with an improper anticompetitive purpose. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (noting that "a naked assertion of conspiracy in a [Section] 1 complaint . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility"); *Honeywell Int'l Inc. v. Ecoer Inc.*, No. 24 Civ. 1464 (PAE), 2024 U.S. Dist. LEXIS 130177, at *19 (S.D.N.Y. July 23, 2024) ("The existence of a lawful business relationship does not plausibly suggest a separate, unlawful agreement to restrain trade") (citation omitted).

Without more, Ms. Clark's Section 1 claim may not proceed, because "[a] restraint of trade cannot simply be a corollary of the agreement; the restraint must be an objective of the agreement" itself. *Suzuki of W. Mass, Inc. v. Outdoor Sports Expo, Inc.,* 126 F. Supp. 2d 40, 47 (D. Mass. 2001); *Zanella, Ltd.*, 368 F.3d at 16 (explaining that "concerted action" is a necessary element of "a successful [S]ection 1 claim"). The Court is therefore unpersuaded by Ms. Clark's objection that the Magistrate Judge applied a higher standard than required at the pleading stage.

Moreover, Ms. Clark's allegation is unsupported by the evidence she supplies in support of the complaint. The materials attached to the complaint state that NLH

rescinded its job offer not because of an agreement not to hire Securitas employees but because Clark failed to disclose when asked on her NLH job application whether she (1) was previously employed by Securitas and (2) had been terminated from that position. *See Compl.*, Attach. 2, *Email* at 2-3 (rescinding offer "due to inaccuracies in [Ms. Clark's] application materials"); *id.*, Attach. 3, *Letter* at 1-2 (same). The complaint's allegation that NLH's stated basis for its recission was pretextual but rather motivated by an alleged anticompetitive arrangement between NLH and Securitas is conclusory, and the Court disregards it. *Twombly*, 550 U.S. at 561. The Court is thus unpersuaded that the Magistrate Judge "improperly credit[ed]" NLH's explanation. *Obj.* at 3. Rather, it is the complaint's own evidence that belies its allegations.

At bottom, the complaint "point[s] to nothing, other than [Ms. Clark's] own inability to obtain employment, to indicate any coordinated action between" NLH and Securitas. *Walker v. Analog Devices, Inc.*, No. 22-11934-PBS, 2023 U.S. Dist. LEXIS 147353, at *11 (D. Mass. Aug. 4, 2023) *R. & R. adopted by* 2023 U.S. Dist. LEXIS 146538 (D. Mass. Aug. 18, 2023). The pleading rules "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Here, Ms. Clark's complaint does not begin to establish a valid Section 1 claim.

### C. The Relevant Market

Although neither the recommended decision nor Ms. Clark's objection addresses it, the complaint's failure to sufficiently define the relevant market is further reason to dismiss Ms. Clark's Section 1 claim. "Without a definition of [the]

market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) (quotation omitted).

The complaint refers to "the healthcare labor market in Bangor and throughout Maine" in general, *Compl.* ¶ 27, but does not elaborate on the "the area of effective competition." *Am. Express Co.*, 585 U.S. at 543. The relevant market, or area of effective competition, encompasses both a geographic market and a product market. *See Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016). Here, the complaint's vague reference to the general healthcare labor market insufficiently defines the relevant product market. The complaint alleges Ms. Clark received a conditional employment offer from NLH as a Patient Transportation Specialist but does not state the services she would provide in that role or how it relates to the healthcare labor market at all. *Compl.* ¶¶ 1-2. Without more, the Court cannot evaluate whether similar services provided by current or former Securitas employees combine to form a competitive market for those same services. Without a definition of the relevant market, the Court must dismiss the complaint.

## D.    Supplemental Jurisdiction

Given that the Court concludes Ms. Clark's only federal claim, the Section 1 claim, must be dismissed for failure to state a plausible claim for relief, the Court declines to exercise supplemental jurisdiction and dismisses without prejudice Ms. Clark's state law claims.[5]

---

[5]    Ms. Clark did not argue in the alternative for the Court to exercise supplemental jurisdiction over her state law claims.

### E.  Leave to Amend

The Court also denies Ms. Clark's request to amend her complaint.  In her objection, Ms. Clark lists "additional factual allegations" she can provide.  *Obj.* at 6-7.  However, she has not actually filed a motion for leave to amend nor has she provided the Court with a proposed amended complaint.  Instead, she suggests that she would like to amend her complaint to cure the current defects in her complaint.  *Id.* at 6 ("Even assuming this Court concludes additional factual allegations are required, dismissal without first granting leave to amend is inappropriate").  However, the Court will not grant leave to amend in the abstract.  If she wishes to amend her complaint, she must file a motion to amend and attach a proposed amended complaint, and if she does so, the Court will rule on the merits of the motion as presented.  Until then, her complaint is fatally defective for the reasons clearly set forth by the Magistrate Judge and expanded upon in this order.

The First Circuit "has made clear that a 'contingent request to replead, contained in an opposition to a motion to dismiss' rather than a motion to amend pursuant to Federal Rule of Civil Procedure 15(a), is strongly disfavored." *Lu v. Kwon*, 25-CV-13649-AK, 2026 U.S. Dist. LEXIS 174246, at *17 (D. Mass. Aug. 5, 2026) (first quoting *Fisher v. Kadant, Inc.*, 589 F.3d 505, 510 (1st Cir. 2009); and then citing *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 15 (1st Cir. 1984)).

To be clear, the Court reviewed the additional facts contained in Ms. Clark's objection and is not convinced that these additional factual allegations would remedy

the several defects the Court and the Magistrate Judge identified in this order and in the recommended decision regarding Ms. Clark's antitrust standing.

## III.  CONCLUSION

Accordingly, for the reasons set forth in the recommended decision and in this order, the Court AFFIRMS and ADOPTS the Magistrate Judge's Recommended Decision after Preliminary Review (ECF No. 5).  The Court therefore OVERRULES Heather Clark's Objection to the Magistrate Judge's Recommended Decision (ECF No. 6).  To the extent Heather Clark requests permission to amend her complaint in lieu of a formal motion to amend pursuant to Federal Rule of Civil Procedure 15, the Court DISMISSES her request without prejudice.  Finally, the Court DISMISSES without prejudice Ms. Clark's Complaint and Demand for Jury Trial (ECF No. 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of August, 2026

13